**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**



| | | |
|---|---|---|
| PHILLIP O'BANNON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | |
| CHICAGO BOARD OF EDUCATION, | ) | Honorable   JUDGE HOLDERMAN |
| successor to the CHICAGO SCHOOL | ) | |
| REFORM BOARD OF TRUSTEES of the | ) | Judge Presiding. |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | MAGISTRATE JUDGE ROSEMOND |

00C 7547

DOCKETED
DEC - 1 2000

## COMPLAINT

Now comes the Plaintiff, PHILLIP O'BANNON ("O'Bannon"), by and through his

attorney, John Thomas Moran, Jr. of John T. Moran & Associates, and complaining of

Defendant, Chicago Board of Education , successor to the Chicago School Reform Board of

Trustees of the City of Chicago ("Board of Education"), states as follows:

### PARTIES

1.   Plaintiff is, and at all times relevant to this Complaint has been a citizen of the

State of Illinois, residing at 4733 South Kenwood, Chicago, County of Cook,  Illinois 60615.

2.  Defendant Board of Education is organized under the laws of the State of Illinois

and is responsible for the operation of the public schools within the City of Chicago, Illinois.

The principal office of the Board of Education is located at 125 South Clark Street, Seventh

Floor, Chicago, Illinois 60603.

### JURISDICTION AND VENUE

3.   Count I of this action is brought pursuant to the Fourteenth Amendment to the

Constitution of the United States and 42 U.S.C. § 1983. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331. Count II is brought pursuant to this Court's supplemental jurisdiction as claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III. . . ." 28 U.S.C. § 1367(a). The state law breach of contract claim is not an adequate remedy.

4. Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the cause of action arose in this district.

## NATURE OF THE ACTION

5. This action arises out of the efforts of the Board of Education to deprive Phillip O'Bannon, without due process of law, of his property and liberty rights pursuant to his employment contract with the Board of Education and the Local School Council at Chicago Vocational Career Academy ("CVCA") to serve as the Principal of CVCA in Chicago, Illinois commencing April 5, 2000 and ending June 30, 2004, and where O'Bannon's good name, reputation, honor and integrity, as well as his competence to perform in his chosen profession, is being damaged because of the Board's conduct. The Board of Education has failed or refused to give O'Bannon notice of charges; a fair, prompt hearing; and due process of law.

## Count I

## Deprivation of Civil Rights

6. On or about April 5, 2000, Plaintiff entered into a Uniform Principal's Performance Contract with the Board of Education, and the CVCA Local School Council, for O'Bannon to serve as the Principal of CVCA (the "Contract"). A copy of the Contract is

attached hereto as Exhibit A. CVCA is located at 2100 East 87th Street, Chicago, Illinois.

7. The Contract provides, *inter alia*, that O'Bannon was to be employed as the Principal of Chicago Vocational Career Academy commencing April 5, 2000 and ending June 30, 2004.

8. The Contract provides in part that it shall constitute the entire agreement and no additions, deletions or modifications may be made to the Contract except by a writing signed by the Board of Education, the Local School Council and the Principal and subject to 105 ILCS 5/34-8.1 and other matters not relevant to this cause.

9. On or about Friday, October 6, 2000, a Dr. Klunk in the Board's Department of High School Development, requested O'Bannon to attend a meeting at the Board's headquarters with Wilfredo Ortiz at 11:00 a.m.. He informed O'Bannon that Paul Vallas had decided to remove O'Bannon from his position.

10. O'Bannon requested a meeting with Vallas. It was suggested that he meet with Dr. Blondean Davis who informed him that he could meet with Vallas at 4:30 p.m.

11. At or about 5:30 p.m. O'Bannon met with Vallas who informed him that he had decided to remove O'Bannon from his position because of fights and excessive fire alarms and that he had received some of the allegations from the prior principal, Dr. Betty D. Green. At the conclusion of the meeting, Vallas informed O'Bannon that he had two more weeks and would send Ron Beavers and a Mr. Schlesinger to further evaluate the situation.

12. O'Bannon returned to CVCA on October 10, 2000. The following day at or about 2:30 p.m. he received a call from Dr. Davis' office that a letter was being delivered requesting that he report to the Board's headquarters for reassignment on October 11, 2000.

13. O'Bannon went to the Board's headquarters to try to meet with Vallas. When he arrived he was informed that he was not allowed in the building and discovered that his photo identification had been distributed to the security guards at 125 S. Clark. O'Bannon explained that he was supposed to report to the building the next morning and was finally escorted to Blondean Davis' office.

14. O'Bannon then met with Davis and Vallas. Vallas said O'Bannon was threatening teachers and he had to go. He told O'Bannon to take the next two days off.

15. The Local School Council set an emergency meeting for Saturday, October 14, 2000.

16. Plaintiff was telephoned at home by Dr. Cozette Buckney who informed O'Bannon to stay home, that Vallas wanted to meet alone.

17. In the morning of October 14, 2000, two aides of Vallas, James Dean and Wilfredo Ortiz, met with the LSC in executive session. Approximately two hours later, Vallas arrived and met with the LSC and O'Bannon is informed that Vallas told them that if they supported O'Bannon he (Vallas) would not support CVCA and if they supported him and his interim principal, he would support the school. The chairperson came out of executive session and stated that they supported Vallas. No vote was taken.

18. O'Bannon thereafter was assigned by the Board of Education as an "Associate Principal" at Lucy Flower Vocational High School on the west side of Chicago and remains there to date. He continues to receive the same salary he had as Principal of CVCA.

19. O'Bannon performed his duties as the Principal and initiated programs and activities during his principalship of Chicago Vocational Career Academy.

-4-

20.  At all times relevant to this Complaint, the powers, duties and responsibilities of the Board of Education were governed by the Illinois School Code in general and in particular by 105 ILCS 5/34-85. The Board of Education purported to act under color of state law.

21.  The Contract gives O'Bannon a protectable property and liberty interest within the meaning of the Fourteenth Amendment to the United States Constitution in his continued employment as the Principal of Chicago Vocational Career Academy and the action of the Board of Education, its employees and agents has caused O'Bannon to suffer damages which cannot be recompensed with money alone.

22.  The conduct of the Board of Education, without just cause and due process, is causing the good name, reputation, honor and integrity of O'Bannon to be damaged.

23.  The constitutional injury under the Fourteenth Amendment to the United States Constitution and under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983, the failure to give O'Bannon notice of charges, a fair, prompt hearing and due process, was caused by the Reform Board, its employees and agents, acting with final policy making authority. In addition, the Board's actions towards O'Bannon were so arbitrary and so lacking in any protective process of law as to violate the guarantees of substantive due process.

24.  The Board of Education has a policy, custom or usage of failing to provide due process to reassigned administrators, such as O'Bannon. This practice includes reassigning administrators for long periods of time without notice of charges; a fair, prompt hearing; and due process of law. Indeed, the Board of Education has no process for those in

-5-

O'Bannon's shoes and therefore he is entitled to a full due process hearing with the full panoply of procedural rights that attach to it.

25.    The Board of Education has deprived Phillip O'Bannon of his property and liberty interests without due process of law in the following ways:

a)    The Board of Education has failed to give O'Bannon notice of charges;

b)    The Board of Education has failed to give O'Bannon a fair, prompt hearing in which to clear his name;

c)    The Board of Education has prolonged any investigation of O'Bannon for an unreasonably long period of time;

e)    The Board of Education has caused O'Bannon to be reassigned from his position as Principal of Chicago Vocation Career Academy without just cause;

f)    The Board of Education has caused O'Bannon to suffer humiliation and loss of an opportunity to perform meaningful work which cannot be recompensed with money alone;   and

g)    The Board of Education has caused O'Bannon to have his good name, reputation, honor and integrity damaged.

WHEREFORE, Plaintiff, Phillip O'Bannon, respectfully requests that this Court enter judgment in his favor against Defendant Board of Education of the City of Chicago, successor to the Chicago School Reform Board of Trustees:

a)    declaring that the Contract between O'Bannon and the Board of Education shall be in full force and effect and that O'Bannon shall be

reinstated as the Principal of Chicago Vocational Career Academy;

b) enjoining the Board of Education from reassigning O'Bannon from his position as Principal of Chicago Vocational Career Academy without due process of law;

c) awarding O'Bannon compensatory damages in an amount to be determined at trial;

d) awarding O'Bannon his costs and attorneys' fees; and

e) granting O'Bannon such other and further relief as this Court deems just and proper.

## COUNT II

### Breach of Contract

1-20. O'Bannon realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 20 of Count I as paragraphs 1 through 20 of this Count II.

21. The Board of Education, its employees and agents have breached the Contract of O'Bannon to be employed as the Principal of Chicago Vocational Career Academy.

22. O'Bannon is ready, willing and able to perform his duties as the Principal of Chicago Vocational Career Academy under the Contract.

23. O'Bannon has been damaged by the repudiation of the Contract by the Board of Education.

WHEREFORE, Plaintiff Phillip O'Bannon respectfully requests that this Court award judgment in his favor against Defendant Board of Education of the City of Chicago, successor

to the Chicago School Reform Board of Trustees:

a)      awarding O'Bannon compensatory damages in an amount to be determined at trial;

b)      awarding O'Bannon his costs; and

c)      granting O'Bannon such other and further relief as this Court deems just and proper.

Respectfully submitted,

Phillip O'Bannon

By: _____
John Thomas Moran, Jr.

John Thomas Moran, Jr.
John T. Moran & Associates
Attorneys at Law
309 West Washington Street
Suite 900
Chicago, Illinois 60606-3207
(312) 630-0200
(312) 630-0203 (facsimile number)

-8-

97-0226-RS10      UNIFORM PRINCIPAL'S PERFORMANCE CONTRACT

This Agreement ("Agreement") is made and entered this *5th* day of _April_ by and between the Board of Education of the City of Chicago, ("Board of Education"), the Local School Council at _CVS_ School ("Local School Council") and _Phillip O'Bannon_ ("Principal"). This Agreement sets forth the rights and obligations of the parties with respect to the employment of the Principal at _Chicago Vocational_ School ("the Attendance Center").

This Agreement is made pursuant to the provisions of the Illinois School Code, which are incorporated herein by this reference.

In consideration of the following promises, the parties agree as follows:

I.    TERM

Principal is hereby employed by the Board of Education and agrees to serve for four years as the Principal at the Attendance Center commencing **April 5, 2000** and ending **June 30, 2004**, unless this Agreement is terminated earlier as provided in Section V.

II.   DUTIES OF PRINCIPAL

The Principal shall be the chief executive/operating officer of the Attendance Center. The Principal's duties shall include, but not be limited to, the following:

a)   the Principal shall supervise the educational operation of the Attendance Center and shall assume administrative responsibility and instructional leadership, in accordance with the Rules, Policies and Procedures of the Board of Education, for the planning, operation and evaluation of the educational program of the Attendance Center;

b)   the Principal's primary responsibility is the improvement of instruction at the Attendance Center;

c)   the Principal shall develop a Local School Improvement Plan ("Plan"), pursuant to the Illinois School Code, 105 ILCS 5/34-2.4, for the Attendance Center in consultation with the Local School Council, all categories of school staff, parents and community residents. The Principal shall then submit said Plan to the Local School Council for approval or disapproval;



EXHIBIT
A

(2/26/97)

97-0226-RS10

d) after a Plan has been approved by the Local School Council, the Principal shall be responsible for the implementation of the approved Plan;

e) the Principal, with the assistance of the Professional Personnel Advisory Committee, shall develop the specific methods and contents of the school curriculum within the Board of Education's system-wide curriculum standards and objectives and the requirements of the Plan;

f) the Principal shall develop an expenditure plan ("expenditure plan"), pursuant to the Illinois School Code, with respect to funds allocated and distributed to the Attendance Center by the Board of Education. The expenditure plan shall be developed in consultation with the Local School Council, the Professional Personnel Advisory Committee of the Attendance Center and all other school personnel. The Principal shall submit said expenditure plan annually to the Local School Council for approval or disapproval;

g) after an expenditure plan has been approved by the Local School Council, the Principal shall be responsible for the implementation of the approved expenditure plan;

h) unless prohibited by law or by Rule of the Board of Education, the Principal shall provide to the Local School Council copies of all internal audits and any other pertinent information generated by any audits or reviews of the programs and operations of the Attendance Center;

i) the Principal shall direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the Attendance Center in accordance with Board of Education Rules, Policies and Procedures and consistent with applicable collective bargaining agreements;

j) the Principal shall fill positions by appointment, and shall submit recommendations to the General Superintendent or Chief Executive Officer concerning the appointment, dismissal, retention, promotion, and assignment of all personnel assigned to the Attendance Center, as provided in 105 ILCS 5/34-8.1;

k) the Principal shall attend academies or other training sessions mandated by the Board of Education and the Illinois State Board of Education;

2

(2/26/97)

97-0226-RS10

l)  the Principal shall perform faithfully his/her duties and obligations as a member of the Local School Council of the Attendance Center;

m)  the Principal shall endeavor to maintain a positive education and learning climate at the Attendance Center;

n)  the Principal shall endeavor to establish clear lines of communication regarding school goals, accomplishments, practices and policies with the Local School Council, parents and teachers, and, unless prohibited by law or by Rule of the Board of Education, shall provide to the Local School Council information necessary for the Local School Council to perform its duties under the School Code;

o)  the Principal shall fulfill other obligations imposed upon the Principal by: the Illinois School Code; other applicable state and federal laws; Rules, Policies and Procedures of the Board of Education; collective bargaining agreements; the desegregation consent decree; and other court decisions, decrees and settlements entered into by the Board of Education;

p)  the Principal may, in accordance with Board Rules and Procedures including, but not limited to its Rule concerning conference leave, seek professional growth through collegial activities, attendance at professional meetings and the pursuit of further education.

Failure to perform the duties set forth in this Section may result in disciplinary action pursuant to Board Rules, Policies and Procedures, and may constitute a material breach of this Agreement and cause for termination.

III. COMPENSATION

The Board of Education shall pay salary and provide benefits to the Principal in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certificated employees are eligible.

IV. EVALUATION

A.  Evaluation By Local School Council

(a)  The Local School Council shall annually evaluate the Principal. The evaluation shall be in writing in a form

3

(2/26/97)

97-0226-RS10 prescribed by the Board of Education, which shall include the following criteria:

1). the Principal's fulfillment of his/her duties under this Agreement, including the duties specifically identified in Section II of this Agreement;

2) such other performance factors as are mutually agreed upon by the Principal, the Board of Education and the Attendance Center's Local School Council in accordance with Section XI of this Agreement.

(b) The Local School Council's evaluation also shall take into consideration the annual evaluation of the Principal conducted by the General Superintendent or Chief Executive Officer.

(c) The Principal and the Local School Council shall meet at least once as the Local School Council gathers information to prepare its annual evaluation. The Local School Council shall send its signed, written evaluation, in the form prescribed by the Board of Education, to the Principal no later than May 1 during each year of this Agreement;

(d) Within 30 days of the Principal's receipt of the Local School Council's signed, written evaluation, the Principal and the Local School Council may meet, upon request of either the Principal or the Local School Council, in executive session, to discuss the contents of the evaluation. As a result of that meeting, the Local School Council may, but is not obligated to, revise its written evaluation. The Local School Council shall send a copy of its final evaluation to the Principal, with a copy to the General Superintendent or Chief Executive Officer, no later than June 15 during each year of this Agreement.

B. Evaluation By General Superintendent or Chief Executive Officer

(a) The General Superintendent or Chief Executive Officer shall, in consultation with the Local School Council, conduct an evaluation of the Principal. The evaluation shall be in writing in a form prescribed by, and pursuant to guidelines promulgated by, the Board of Education.

4

(2/26/97)

·97-0226-RS10

(b)   The evaluation conducted by the General Superintendent or Chief Executive Officer shall be conducted annually, and shall be sent to the Principal and Local School Council.

(c)   No evaluation pursuant to this Section shall be conducted until the Principal has been employed at the Attendance Center pursuant to this Agreement for at least one school semester.

V.   CONTRACT TERMINATION

This Agreement may be terminated by the Board of Education before expiration of the term stated in Section II of this Agreement for any one of the following reasons or by any one of the following methods:

(a)   written agreement of the Board of Education, the Local School Council and the Principal;

(b)   removal of the Principal for cause pursuant to 105 ILCS 5/34-85;

(c)   closure of the attendance center;

(d)   death, resignation or retirement of the Principal;

(e)   misrepresentation referred to in section IX of this Agreement;

(f)   revocation or suspension of the requisite certification to serve as Principal in the Chicago Public Schools;

(g)   removal, reassignment, layoff or dismissal of the Principal to the extent permitted by 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4 of the School Code.

VI.   EXPIRATION

Unless terminated earlier, this Agreement, including and notwithstanding the procedures set forth herein, shall expire at the end of its stated term and shall not grant or create any contractual rights or other expectancy of continued employment beyond the term of this Agreement, except as indicated and solely to the extent provided in Section VII of this Agreement.

VII.   RENEWAL AND NON-RENEWAL

(a)   The Local School Council shall decide whether to renew this Agreement with the Principal. The Local School Council shall notify the Principal of its decision regarding whether to renew this Agreement with

5

(2/26/97)

97-0226-RS10

the Principal in writing no later than February 1 of the calendar year in which this Agreement expires or, if the Principal's term expires on a date other than June 30, 150 days before expiration of this Agreement. Notice of the Local School Council's decision shall be made by personal delivery to the Principal or by registered or certified mail, and shall be deemed to have occurred on the date the Principal receives the written notice from the Local School Council. The Principal shall have no right to demand that the Local School Council make this decision earlier than the date set forth in this Section. In the event that the Local School Council fails to provide written notice of its decision in the manner set forth above by February 1 or, if the Principal's term expires on a date other than June 30, 150 days before expiration of this Agreement, then the Board may extend this Agreement for an additional year or appoint an interim principal at the Attendance Center until the Local School Council selects a new Principal to serve.

(b) In the event that the Local School Council decides not to renew this Agreement with the Principal, the Local School Council shall, if requested by the Principal, provide in writing the reasons for its decision not to renew. The written reasons shall be provided to the Principal, with a copy to the General Superintendent or Chief Executive Officer, no later than February 22 of the calendar year in which this Agreement expires or, if the Principal's term expires on a date other than June 30, 128 days before expiration of this Agreement.

(c) The Local School Council shall have no right to renew this Agreement with the Principal if the Principal fails to meet any requirement which is established or imposed by the Board of Education in accordance with 105 ILCS 5/34-8.1 as a condition of the continued employment of the Principal or of the renewal of this Agreement with the Principal.

(d) In the event that the Local School Council decides to renew this Agreement at the conclusion of the term stated in Section II of this Agreement, the Board of Education, the Local School Council and the Principal shall enter into a new Agreement for a term of four years pursuant to 105 ILCS 5/34-2.3 upon approval by the Board of Education of employment of the Principal.

(e) In the event that this Agreement is not renewed, the Local School Council shall be free to select another principal to serve under a four year performance contract as principal of the Attendance Center.

(f) Pursuant to 105 ILCS 5/34-8.1, in the event that this Agreement is not renewed, the Principal's employment as a principal shall terminate upon the expiration of this Agreement, and he/she shall not be reinstated to any former position which he/she previously held with the Board of Education. However, the failure of the Local School Council to renew this Agreement with the Principal shall not limit the Principal

6

(2/26/97)

97-0226-RS10

from seeking and receiving other employment with the Board of Education based upon his/her experience and valid certifications and, if otherwise qualified under the Illinois School Code, his/her name shall be placed on appropriate eligibility lists which the Board maintains for teaching positions.

(g)  In the event that this Agreement is not renewed and the Principal does not retire or is not otherwise employed by the Board of Education after expiration of the term of this Agreement, the Principal shall be eligible to continue to receive his or her previously provided level of health insurance benefits for a period of 90 days following expiration of the term of this Agreement. Nothing in this subsection is intended to limit or otherwise impact the Principal's rights under COBRA or any other federal or state law concerning insurance.

## VIII. SEVERABILITY

The provisions of this Agreement shall be considered severable and independent.  If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall not be affected.

## IX.  REPRESENTATIONS

(a)  The person signing this Agreement as Principal represents that he/she currently possesses the requisite certification to serve as Principal in the Chicago Public Schools, and that he/she meets any and all requirements for the employment or continued employment of such person as Principal which are established or imposed by the Board of Education in accordance with 105 ILCS 5/34-8.1.  In the event that the Board of Education subsequently finds that such person does not possess the requisite certification to serve as a Principal in the Chicago Public School System, or otherwise fails to meet any requirement established or imposed by the Board of Education in accordance with 105 ILCS 5/34-8.1, this Agreement shall be deemed null and void, and the employment of the person signing this Agreement as Principal shall be terminated.

(b)  If the person signing this Agreement as Principal is not an employee of the  Board of Education at the time of signing, he/she represents: (1) that the information set forth in his/her employment application is true and accurate; and (2) that he/she has never been convicted of any of the enumerated criminal offenses set forth in  105 ILCS 5/34-18.5 of the Illinois School Code.  In the event that the Board of Education subsequently finds: (1) that the information set forth in his/her employment application is not true and accurate; or (2) that he/she has been convicted of any of the enumerated criminal offenses set forth in  105 ILCS 5/34-18.5  of the Illinois School Code, this Agreement shall be deemed null and void, and the employment of the person signing this Agreement as Principal shall be terminated.

(2/26/97)

97-0226-RS10

**X.   APPLICABLE LAW**

This Agreement shall be interpreted and governed by the laws of the State of Illinois.

**XI.   ENTIRE AGREEMENT**

(a)   This Agreement shall constitute the entire Uniform Principal's Performance Contract, and no additions, deletions or modifications may be made to this Agreement during its term unless made in writing and signed by the Board of Education, the Local School Council and the Principal.   However, notwithstanding anything in this Agreement to the contrary this Agreement may be modified upon renewal pursuant to 105 ILCS 5/34-8.1.   Also, notwithstanding anything in this Agreement to the contrary, the Board of Education may establish or impose requirements in accordance with 105 ILCS 5/34-8.1 as conditions of the execution of this Agreement, and may establish or impose requirements in accordance with 105 ILCS 5/34-8.1 as conditions of the renewal of this Agreement.   This Agreement supersedes all prior agreements, arrangements and communications between the parties dealing with the subject matter hereof, whether oral or written.

(b)   Nothing in subsection XI(a) above shall prohibit the Local School Council from negotiating additional criteria pursuant to 105 ILCS 5/34-2.3 of the Illinois School Code.   Such additional criteria shall not discriminate on the basis of race, sex, creed, color or disability unrelated to ability to perform, and shall not be inconsistent with this Uniform Principal's Performance Contract, with other provisions of the Illinois School Code governing the authority and responsibility of principals, with Board of Education Rules, Policies or Procedures, or with court decisions or settlements affecting the Board of Education. Any additional criteria are subject to approval by the Board of Education's legal counsel, working in consultation with the organization representing Principals (currently the Chicago Principals And Administrators Association), for purposes of determining such consistency, and such criteria shall not be effective until they are so reviewed and approved, and executed by the parties in accordance with subsection XI(a) above.

**XII.   MISCELLANEOUS**

(a)   This Agreement shall be binding upon and shall inure to the benefit of any transferees, successors or assigns of the Board of Education.   This Agreement may not be assigned by the Principal under any circumstances.

(b)   This Agreement is entered into solely for the benefit of the parties hereto, and any transferees, successors or assigns of the Board pursuant to subsection XII (a) above.   This Agreement is not intended to

8

(2/26/97)

97-0226-RS10

confer any rights or impose any duties on any third party and is not intended to expand the liability of any party hereto to any third party.

(c)    The Rules, Policies and Procedures of the Board of Education promulgated to date and during the term of this Agreement are hereby incorporated by this reference, except to the extent such Rules, Policies or Procedures are inconsistent with the terms and conditions of this Agreement, in which event the terms and conditions of this Agreement shall control.

(d)    The waiver by any party of a breach of any provision of this Agreement by another party, or the failure of any party to enforce any provision or obligation hereunder, shall not operate or be construed as a waiver of any subsequent breach by that party or bar the subsequent enforcement of any provision or obligation under this agreement.

_Phillip O'Bannon_      Dated: _April 6, 2000_
Principal

_Chicago Vocational High School_ Local School Council

By: _Sylvia L. Rogen_      Dated: _April 4, 2000_
LSC Chairperson

Attest: _Benson I. Uwymavufie_
LSC Secretary

BOARD OF EDUCATION

By:_____      Dated:_____
President Board of Trustees

Attest:_____
Secretary Board of Trustees

9

(12/26/97)

97-0226-RS10

## CHICAGO PUBLIC SCHOOLS
## DEPARTMENT OF SCHOOL AND COMMUNITY RELATIONS

| Important Note: This form must accompany all Local School Council official actions pertaining to the principalship at the school. |
| --- |

### Certification of Principal Selection by Local School Council
(please type or print)

School: _Chicago Vocational_ Region: _06_

Candidate Name: _Phillip O'Bannon_ Social Security # _351_-_42_-_5216_

Principal Classification: _✓_ New ____ Renewal ____ Interim

We, the members of the Local School Council, hereby certify that at our meeting of

_April 4, 2000_, we voted* _9_ to _0_ to select _Mr. Phillip O'Bannon_
Candidate

*(please refer to *The Link* regarding the legal number of votes necessary.)

The candidate is currently a(n) _✓_ employee ____ non-employee of the CPS
____ Assistant Principal at above school

Name of departing principal _Dr. Betty D. Green_ Social Security # _358_-_34_-_4733_

Effective Departure Date: _Jan 21, 2000_

As required by law, a quorum was present, 6 for elementary schools not including the principal or 7 for high schools not including the principal and student, and further that we have complied with the Open Meetings Act providing for public notice, and an agenda with at least 48 hours written notice to each member.

We further certify that the principal (and student if a high school) did not vote in the selection process and was not counted for the purpose of determining whether a quorum existed at the above meeting.

Signatures of Local School Council Members:　　Date: _April 4, 2000_

1. _[signature]_　　6. _[signature]_

2. _Betty D Porter_　　7. _[signature]_

3. _[signature]_　　8. _Alma Flournoy_

4. _Sabrina Thornton_　　9. _Stacey Simmons_

5. _Benson Ii Uwumarogie_　　10. _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PHILLIP O'BANNON,

              Plaintiff,

    v.

CHICAGO BOARD OF EDUCATION,
successor to the CHICAGO SCHOOL
REFORM BOARD OF TRUSTEES of the
CITY OF CHICAGO,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**00C 7547**

Case No.

Honorable  JUDGE HOLDERMAN

Judge Presiding.
    MAGISTRATE JUDGE ROSEMOND

## JURY DEMAND

Now comes the Plaintiff, PHILLIP O'BANNON ("O'Bannon"), by and through his attorney, John Thomas Moran, Jr. of John T. Moran & Associates, and demands trial by jury in the above captioned cause.

Respectfully submitted,

Phillip O'Bannon

By: _____
    John Thomas Moran, Jr.

**John Thomas Moran, Jr.**
**John T. Moran & Associates**
**Attorneys at Law**
**309 West Washington Street**
**Suite 900**
**Chicago, Illinois 60606-3207**
**(312) 630-0200**
**(312) 630-0203 (facsimile number)**

**DOCKETED**

JS 44
(Rev. 12/96)

**Ⓤ Ⓣ Ⓙ  CIVIL COVER SHEET**

DEC - 1 2000

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**00C 7547**

JUDGE HOLDERMAN

Phillip O'Bannon

**DEFENDANTS**

Chicago Board of Education, successor to the Chicago School Reform Board of Trustees of the City of Chicago,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Cook

(EXCEPT IN U.S. PLAINTIFF CASES)

MAGISTRATE JUDGE ROSEMOND

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John T. Moran & Associates
309 W. Washington St., Ste. 900
Chicago, Illinois 60606
(312) 630-0200

ATTORNEYS (IF KNOWN)
Marilyn Johnson
125 South Clark Street, Seventh FL.
Chicago, Illinois 60603

## II. BASIS OF JURISDICTION  (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT  (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. Section 1983 & Supplemental Jurisdiction

## VII. REQUESTED IN COMPLAINT

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint

JURY DEMAND:  ☐ YES   ☐ NO

**VIII.** This case   ☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
11/30/2000

SIGNATURE OF ATTORNEY OF RECORD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

DEC - 1 2000

**JUDGE HOLDERMAN**
MAGISTRATE JUDGE ROSEMOND

In the Matter of

Phillip O'Bannon
      v.
Chicago Board of Education, successor
to the Chicago School Reform Board of Trustees
of the City of Chicago

Case Number:

**00C 7547**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Phillip O'Bannon

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| **SIGNATURE** *[signature]* | | | **SIGNATURE** | | |
| **NAME** John Thomas Moran, Jr. | | | **NAME** | | |
| **FIRM** John T. Moran & Associates | | | **FIRM** | | |
| **STREET ADDRESS** 309 West Washington St., Suite 900 | | | **STREET ADDRESS** | | |
| **CITY/STATE/ZIP** Chicago, Illinois 60606 | | | **CITY/STATE/ZIP** | | |
| **TELEPHONE NUMBER** (312) 630-0200 | **FAX NUMBER** 312-630-0203 | | **TELEPHONE NUMBER** | **FAX NUMBER** | |
| **E-MAIL ADDRESS** | | | **E-MAIL ADDRESS** | | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 1954822 | | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | |
| **MEMBER OF TRIAL BAR?** | YES ☒ NO ☐ | | **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☐ |
| **TRIAL ATTORNEY?** | YES ☒ NO ☐ | | **TRIAL ATTORNEY?** | YES ☐ | NO ☐ |
| | | | **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ | NO ☐ |

| (C) | | | (D) | | |
|---|---|---|---|---|---|
| **SIGNATURE** | | | **SIGNATURE** | | |
| **NAME** | | | **NAME** | | |
| **FIRM** | | | **FIRM** | | |
| **STREET ADDRESS** | | | **STREET ADDRESS** | | |
| **CITY/STATE/ZIP** | | | **CITY/STATE/ZIP** | | |
| **TELEPHONE NUMBER** | **FAX NUMBER** | | **TELEPHONE NUMBER** | **FAX NUMBER** | |
| **E-MAIL ADDRESS** | | | **E-MAIL ADDRESS** | | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | | |
| **MEMBER OF TRIAL BAR?** | YES ☐ NO ☐ | | **MEMBER OF TRIAL BAR?** | YES ☐ | NO ☐ |
| **TRIAL ATTORNEY?** | YES ☐ NO ☐ | | **TRIAL ATTORNEY?** | YES ☐ | NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ NO ☐ | | **DESIGNATED AS LOCAL COUNSEL?** | YES ☐ | NO ☐ |