Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7547 | **DATE** | 10/29/2001 |
| **CASE TITLE** | O'BANNON vs. CHGO BOARD OF EDUCATION et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendants' motion for summary judgment is granted in part and denied in part. The Count I due process claims and the Count III breach of contract claim of the first amended complaint are dismissed in their entirety with prejudice. Summary judgment is denied as to the Count I Section 1983 retaliation claim. All pending motions are moot. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 30 2001 date docketed | |
| | Docketing to mail notices. | | | 54 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 OCT 30 AM 8:00 | 10/29/2001 date mailed notice | |
| JS | courtroom deputy's initials | | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP O'BANNON,

    Plaintiff,

v.

CHICAGO BOARD of EDUCATION
successor to the CHICAGO SCHOOL
REFORM BOARD OF TRUSTEES of the
CITY OF CHICAGO, PAUL VALLAS,
BLONDEAN DAVIS, and UNKNOWN
OTHERS, individually,

    Defendants.

No. 00 C 7547

DOCKETED
OCT 3 0 2001

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On April 12, 2001, plaintiff Phillip O'Bannon ("O'Bannon") filed a three-count first amended complaint against defendants Board of Education ("Board"), Paul Vallas ("Vallas"), and Blondean Davis ("Davis"). Count I states two claims against the Board: the first alleges violations of his due process rights under the Fourteenth Amendment and the second alleges retaliation under 42 U.S.C. § 1983. Count II alleges conspiracy to interfere with civil rights under 42 U.S.C. § 1985 against the Board, Vallas and Davis, with Vallas and Davis as agents and employees of the Board. Count III states a claim for breach of contract against the Board. On May 1, 2001, this court dismissed Count II of plaintiff's first amended complaint and on September 14, 2001, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the

1



remaining counts of the first amended complaint. In response to defendants' motion for summary judgment, plaintiff filed a motion to strike certain portions of defendants' Local Rule 56.1(a)(3) statement of material facts. Having reviewed plaintiff's motion to strike, this court will consider defendants' motion for summary judgment without relying on portions of defendants' Local Rule 56.1(a)(3) statement of material facts and supporting affidavits that the court finds to be either conclusory and lacking in factual support, or inadmissable hearsay. For the following reasons, defendants' motion for summary judgment is GRANTED as to the Count I due process claim and the Count III breach of contract claim, but DENIED as to the Count I Section 1983 retaliatory discharge claim.

## STATEMENT OF FACTS[1]

On April 5, 2000, O'Bannon entered into a Uniform Principal's Performance Contract ("Contract") with the Board and the Chicago Vocational Career Academy ("CVCA") for O'Bannon to serve as the principal of CVCA from April 5, 2000 to June 30, 2004, subject to O'Bannon's performance of his duties in accordance with all Board rules, policies, and procedures. At all times until July 2001, Vallas was chief executive officer, or general superintendent, of the Board. The Contract provided that Vallas was authorized by the Board rules to remove a principal from his

---

[1] The following facts are undisputed and are taken from plaintiff's and defendants' respective Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits. Under Local Rule 56.1(b)(3), the nonmovant's response to movant's statement of material facts must include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," and "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Although plaintiff specifically cites to the record in opposing defendants' statement of material facts, in several instances plaintiff cites to irrelevant or insufficient portions of the record that do not directly support plaintiff's contention. These statements will be deemed admitted for purposes of deciding this motion for summary judgment.

2

schools when, in Vallas' judgment, removal and temporary reassignment was in the best interest of the Chicago Public Schools. The Contract also specified six grounds for terminating the Contract, including removal of O'Bannon for cause under 105 ILCS 5/34-85. At all times until July, 2001, Davis was chief officer of the division of Chicago Public Schools and regions. When a school experienced a crisis, a threat to student safety, or other instability, Davis was the person responsible for solving the problem or making recommendations to Vallas as to possible solutions.

Prior to being hired as the CVCA principal, O'Bannon was the assistant principal at Kenwood High School, a Chicago public school. The CVCA appointment was O'Bannon's first experience as a principal. At the time of O'Bannon's appointment, CVCA was the second largest high school in the Chicago public school system. On April 6, 2000, Dr. Betty Esperanza Green ("Green"), a former principal of CVCA, was hired by Vallas to assist O'Bannon in his transition as the principal at CVCA. Shortly after O'Bannon's appointment on April 5, 2000, Davis also asked Dr. Tommye Brown and James Maloney, both former principals and administrators, to go to CVCA to assist O'Bannon on various occasions. On June 21, 2000, one week after senior class graduation, O'Bannon was given a directive from the Board instructing O'Bannon to issue a diploma to a certain senior student, Eric A. O'Bannon did not issue the student a diploma and instead recommended the student to attend summer school class. On July 14, 2000, O'Bannon was given another directive to close insufficiently funded or insufficiently attended classes before the beginning of the September, 2000 school year. O'Bannon did not close certain teaching positions and on September 20, 2000, Green was authorized to approve and make recommendations for closures of certain of O'Bannon's programs. In addition, Green was asked to analyze class membership and consolidate classes.

3

At the start of the school year, beginning in September, 2000, Davis received complaints from the CVCA community regarding the lack of leadership and effective management at CVCA.[2] Green reported to Davis that O'Bannon was increasingly resistant to Green's efforts to assist O'Bannon and that O'Bannon's management was not improving. During the first week of October, Davis recommended that O'Bannon be removed from CVCA. On October 6, 2000, O'Bannon met with Vallas and Davis to discuss Davis' perception that the situation at CVCA was deteriorating and that O'Bannon was resistant to assistance. O'Bannon asked for more time to make improvements and Vallas assented to O'Bannon's request. On October 10, 2000, O'Bannon summoned the CVCA school staff together for a meeting. Vallas received reports that during the meeting, O'Bannon made disparaging remarks to the CVCA staff about Davis, Green, and Vallas, and threatened to retaliate against any teacher who cooperated with the Board against O'Bannon.

On October 11, 2000, Davis and Vallas removed O'Bannon from CVCA "until further notice," based upon "ongoing concerns regarding the educational and administrative operation of [CVCA] and the apparent inability to create an environment conducive to learning at the school" and because "numerous individuals on the faculty and staff at [CVCA] have reported that [O'Bannon] [has] made inappropriate threatening statements to them." (Def.'s Mot. for Summ. J. Ex. J.) Vallas then offered O'Bannon a temporary reassignment position as associate principal at Lucy Flower High School ("Flower") with the same pay and benefits of a full principal. O'Bannon accepted the position and began working at Flower in October, 2000. O'Bannon attempted to negotiate with the Board for several additional accommodations, including a demand for a pay increase over what he

---

[2]In his motion to strike, O'Bannon argues that this statement is inadmissible hearsay. Because the statement is not offered to prove the truth of the matters asserted in the community complaints, the court finds that the statement is not hearsay.

4

had been making as CVCA principal. The Board rejected this demand. On November 30, 2000, O'Bannon filed a lawsuit against the Board seeking to enforce his contract for the principalship at CVCA. On January 26, 2001, the Board served O'Bannon a copy of termination charges to dismiss O'Bannon from his employment with the Board of Education of the City of Chicago, along with a notice of a pre-termination hearing, and procedures for requesting a full hearing before the Illinois Board of Education. On February 7, 2001, following the pre-termination hearing, O'Bannon was suspended from his reassignment position at Flower without pay until the conclusion of the termination proceedings. O'Bannon then received a full termination hearing conducted by the State Board of Education, with pre-hearing discovery and full presentation of witnesses. The presentation of evidence at the hearing was concluded in August of 2001. Post-hearing briefs were filed and the hearing officer's decision was still pending at the time this motion for summary judgment was filed.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine

5

issue of material fact that requires trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. See id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. See Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

## ANALYSIS

I. Due Process Violations

A. Deprivation of Liberty Interest Claim

Under Count I, O'Bannon alleges that the Board deprived him of a liberty interest in pursuing meaningful work as a principal without due process when the Board removed him from CVCA, damaged his good name, reputation, honor, and integrity. A claim that a government employer has infringed an employee's liberty to pursue the occupation of his or her choice requires that (1) the employee be stigmatized by the employer's actions; (2) the stigmatizing information be publicly disclosed; and (3) the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. See Strasburger v. Board of Educ., Hardin County Community Unit Sch. Dist. No. 1, 143 F.3d 351, 356 (7th Cir. 1998).

In support of his liberty interest claim, O'Bannon offers evidence that on October 12, 2000, the Chicago Tribune reported that Chicago Public Schools Chief Paul Vallas said that the principal of CVCA was being removed from his post for unspecified academic reasons, and that that evening, Channel 5 reported at 6:00 p.m. and 10:00 p.m. that Paul Vallas stated, "I question [O'Bannon's] leadership ability." (Pl.'s Local Rule 56.1(b)(3) Statement ¶ 26). However, simply labeling an employee as being incompetent or otherwise unable to meet an employer's expectations does not infringe on the employee's liberty. Lashbrook v. Oerkfitz, 65 F.3d 1339, 1348-49 (7th Cir. 1995). To succeed on a liberty interest claim, the employee's good name, reputation, honor, or integrity must be called into question in such a way as to make it virtually impossible for the employee to find new employment in his chosen field. Olivieri v. Rodriguea, 122 F.3d 406, 408 (7th Cir. 1998). Viewing all the evidence in a light most favorable to O'Bannon, this court finds there is insufficient evidence in the record to create a genuine issue of material fact as to whether O'Bannon was stigmatized such that he was deprived of his liberty interest to pursue his chosen occupation. Since this court finds, based on the undisputed evidence, that O'Bannon was not deprived of a liberty interest, the court need not address whether O'Bannon was afforded procedural due process prior to deprivation.

B. Deprivation of Property Interest

In Count I, O'Bannon also alleges that the Board deprived O'Bannon of his property interest without due process of law. O'Bannon argues that he had an enforceable entitlement to employment as the principal of CVCA for the duration of his Contract and that the Board deprived him of that interest without procedural due process when the Board removed him from CVCA and filed for termination of O'Bannon's employment with the Board of Education of the City of Chicago. A

public employee who, by contract and statute, may be removed only on limited grounds, has a property interest in completing his contract in accordance with the terms of the contract unless the deprivation of property O'Bannon suffered was *de minimis*. See Head v. Chicago School Reform Bd. Of Trustees, 225 F.3d 794, 803 (7th Cir. 2000). This court, however, need not discuss whether O'Bannon has a protected property interest in being principal of CVCA because this court finds that O'Bannon's challenges to the adequacy of the procedures afforded him prior to his removal are without merit.

A public employer who removes an employee from a job in which the employee has a constitutionally protected interest must provide certain limited pre-termination procedures, including, at a minimum: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story. See Cleveland Bd. Of Educ., 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Head v. Chicago School Reform Bd. Of Trustees, 225 F.3d 794, 803-04 (7th Cir. 2000). The chosen decisionmaker must be impartial. See Bakalis v. Golembeski, 35 F.3d 318, 323-26 (7th Cir. 1994).

As a preliminary matter, this court notes that under the Contract, Vallas had the authority to temporarily reassign O'Bannon from CVCA when, in the judgment of Vallas, temporary reassignment was in the best interests of CVCA. (Def.'s Local Rule 56.1(a)(3) Statement Ex. C, § 4-52). Vallas' removal of O'Bannon from CVCA on October 11, 2000 "until further notice" was such a temporary measure in accordance with the Contract. (Def.'s Local Rule 56.1(a)(3) Statement Ex. J.) O'Bannon agreed to accept the temporary reassignment as associate principal at Flower with the same pay and benefits of a full principal. This court finds that O'Bannon was not deprived of his protected property interest in his principalship at CVCA during the temporary reassignment to

8

Flower. See e.g., Townsend v. Vallas, 256 F.3d 661, 673 (7th Cir. 2001) (holding that a temporary transfer of a tenured teacher from his teaching position with full salary pending an investigation did not constitute a removal that could be characterized as the deprivation of a cognizable property right). This court's inquiry into whether O'Bannon was deprived of a protected property interest begins with the Board's initiation of termination proceedings in January, 2001.

O'Bannon complains first that the Board failed to give O'Bannon proper notice of the termination charges. Notice is constitutionally adequate if it is reasonably calculated to apprise interested parties of the proceeding and afford them an opportunity to present their objections. Memphis Light, Gas & Water Div. V. Craft, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); Head v. Chicago School Reform Bd. Of Trustees, 225 F.3d 794, 804 (7th Cir. 2000). The record establishes that on January 26, 2001, O'Bannon received a copy of the written charges, notice of the pre-termination hearing date and time, and procedures for requesting a full hearing before the Illinois Board of Education. (Def.'s Local Rule 56.1(a)(3) Statement Ex. L.) This court finds that O'Bannon received constitutionally adequate notice of the charges that led to his removal.

O'Bannon further argues that the Board failed to give O'Bannon a fair, prompt hearing in which to clear his name. The record establishes that following the pre-termination hearing, O'Bannon received a full, Illinois State Board of Education termination hearing, with pre-hearing discovery and full presentation of witnesses. (Id. Ex M.) This court finds an insufficient amount of evidence in the record to establish a genuine issue of material fact as to whether O'Bannon has been afforded constitutionally adequate procedures prior to and during termination proceedings up to the point defendants' motion for summary judgment was filed. For all the above reasons stated, defendants' motion for summary judgment is GRANTED as to O'Bannon's Count I due process

claims.

## II. Section 1983 Retaliation

In addition to due process claims, Count I also states a claim for retaliation under Section 1983. For O'Bannon to establish a prima facie case of Section 1983 retaliation, he must prove (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two events. See Pugh v. City of Attica, Indiana, 259 F.3d 619, 630 (7th Cir. 2001). Once the prima facie case is established, the burden shifts to defendants to articulate a legitimate and nondiscriminatory reason for their actions, which O'Bannon must then show to be a pretext for unlawful retaliation if he is to prevail. See Contreras v. Suncast Corp., 237 F.3d 756, 765 (7th Cir. 2001).

The Board argues that O'Bannon has not established a causal connection between the two relevant events: the filing of O'Bannon's lawsuit, and the suspension and initiation of termination proceedings against O'Bannon. When the Board temporarily removed O'Bannon from CVCA on October 11, 2000, defendants admit that "Vallas could have authorized dismissal charges against O'Bannon in October, 2000," (Def.'s Local Rule 56.1(a)(3) Statement ¶ 17.), but the Board chose not to initiate dismissal at that time. The Board instead offered O'Bannon temporary reassignment to Flower. Shortly after O'Bannon filed his lawsuit to enforce this CVCA principalship contract on November 30, 2000 the Board filed for suspension and termination of O'Bannon. The Board argued that it had a "no alternative" but to bring dismissal charges against O'Bannon because of the Board's obligation to protect the learning environment at CVCA, and because O'Bannon refused to accept any alternate positions, namely the associate principalship at Flower. (Def.'s Local Rule 56.1(a)(3) Statement ¶22; Def.'s Mem. In Supp. of Mot. for Summ. J. at 10.) O'Bannon, however, disputes

the Board's alleged nondiscriminatory reason for seeking dismissal by presenting evidence that, at the time the Board instituted termination proceedings, O'Bannon was willing and able to continue to competently perform as associate principal at Flower and still remains so today. (Decl. Of Pl. ¶ 13, 17.) The Board's argument that it had "no alternative" but to bring dismissal charges against O'Bannon rests on the alleged fact that O'Bannon insisted on being reinstated at CVCA and would not accept any alternate positions. However, this material fact is disputed. The fact that O'Bannon filed a lawsuit to enforce his employment contract as principal of CVCA does not automatically equal O'Bannon's refusal to accept any alternate positions. Because this court finds that O'Bannon has successfully made out a prima facie inference of retaliation, and a genuine issue of material fact remains as to whether the dismissal charges were based on a legitimate nondiscriminatory reason, summary judgment is DENIED as to O'Bannon's Section 1983 retaliation claim.

III. <u>Breach of Contract</u>

In Count III, O'Bannon claims that by removing him from his position as principal of CVCA before the end of his four-year contractual term of employment, the Board breached its contract with him. O'Bannon argues that the Board's removal of O'Bannon from CVCA on October 11, 2000 constituted a breach of the Contract because he was entitled to, and did not receive, written charges, an evidentiary hearing, and an impartial hearing officer prior to removal. The court finds this argument unconvincing.

The Contract states, in relevant part, that the "Rules, Policies and Procedures of the Board of Education promulgated to date and during the term of this Agreement are hereby incorporated by this reference, except to the extent such Rules, Policies or Procedures are inconsistent with the terms and conditions of this Agreement, in which event the terms and conditions of this Agreement shall

control." (Def.'s Local Rule 56.1(a)(3) Statement Ex. B, § XII(c).) The relevant part of the Rules of the Board of Education of the City of Chicago state that "[t]he General Superintendent of Schools [Vallas] shall have the authority to assign a principal from the principal's school to a temporary assignment when in the judgment of the General Superintendent of Schools that temporary assignment is in the best interests of the Chicago Public Schools and does not unreasonably compromise the educational program at the principal's school." (Id. Ex. C, § 4-52.) Vallas, as General Superintendent of the Chicago Public Schools, removed O'Bannon on October 11, 2000 after receiving reports that O'Bannon had threatened teachers at a faculty meeting. This court finds that no genuine issues of material fact exist as to whether Vallas' removal of O'Bannon from CVCA on October 11, 2001 was in accordance with the Contract terms.

The Contract goes on to state that the Contract may be terminated for several reasons, including removal of a principal for cause pursuant to 105 ILCS 5/34-85. Under 105 ILCS 5/34-85, O'Bannon is entitled to written charges and specifications, notice of the pre-termination hearing, and procedures for requesting the termination proceeding, but he is only entitled to this *after* Vallas initiated removal of O'Bannon with cause pursuant to 105 ILCS 5/34-85. (Emphasis added.) This court finds that no genuine issue of material fact exists as to whether the Board followed appropriate procedures after dismissal charges were brought against O'Bannon. Accordingly, defendants' motion for summary judgment as to O'Bannon's Count III breach of contract claim is GRANTED.

## CONCLUSION

For all the above stated reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part. The Count I due process claims and the Count III breach of contract claim of the first amended complaint are dismissed in their entirety with prejudice. Summary judgment is DENIED as to the Count I Section 1983 retaliation claim. All pending motions are moot. The parties are again urged to discuss settlement. All previously set dates remain.

ENTER:

*/s/ James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: October 29, 2001